**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JCCS, INC. and DAVID RISEN,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. W-24-CV-00632-ADA-DNM** |
| | § | |
| **MEDELLIN CONCRETE CHIPPING** | § | |
| **SERVICE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE**
**JUDGE REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT.**
**NO. 16]**

**TO:    THE HONORABLE JUDGE ALAN D. ALBRIGHT,**
**UNITED STATES DISTRICT JUDGE**

The undersigned submits this Report and Recommendation to the District Judge pursuant to 28 U.S.C. **§** 636(b), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is JCCS's Motion for Summary Judgment (Dkt. No. 16). The Court held a hearing on the matter on January 23, 2026. For the following reasons, the Court **RECOMMENDS** the Motion be **GRANTED IN PART** and **DENIED IN PART.**

## I.    BACKGROUND

JCCS seeks: (a) declaratory judgment that Medellin Concrete Chipping Service, Inc. ("Medellin") is not the first user of the name "JCCS" in connection with the concrete chipping industry and, subsequently, is not the rightful owner of the trademark for "JCCS," (b) a

declaratory judgment that Medellin obtained its trademark for "JCCS" fraudulently, and (c) such other relief as the Court deems proper pursuant to 15 USC § 1117. Dkt. No. 16 at 1.

JCCS is a concrete chipping company. Dkt. No. 16 at 1. In or about 2019, Medellin tried to purchase JCCS, but its offer was rejected. *Id.* at 2. Medellin then sued JCCS in state court. *Id*. In that suit, Medellin acknowledged that JCCS "is a corporation duly formed and operating under the laws of the state of Texas" and that David Risen is the Registered Agent for JCCS. *Id*.

Following the state lawsuit, Medellin sought and obtained a trademark from the USPTO for "JCCS" as a concrete chipping company. *Id.* at 2-3. In Medellin's Trademark Application, Medellin specifically claimed that its first use of the mark "JCCS" occurred beginning in January 2023, which is approximately three years after Medellin filed suit against JCCS and during the pendency of the litigation. *Id*. Medellin did not acknowledge the concurrent use of the mark by JCCS when it sought registration. Dkt. No. 16, Ex. 4.

JCCS was the first user of the name "JCCS," which Medellin acknowledges. Dkt. No. 17 at 2. Despite this knowledge, Medellin still sought registration within the USPTO. Furthermore, in Medellin's trademark application filed with the USPTO, Medellin affirmed that "no other persons, except, if applicable, authorized users, members, and/or concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services/collective membership organization of such other persons, to cause confusion or mistake, or to deceive." Dkt. No. 16, Ex. 4. In late October 2024, Medellin's counsel sent a demand that JCCS stop using the name "JCCS," alleging a violation of Medellin's trademark. *Id*. at 3. Medellin has not disputed any of the above-stated facts in either its answer or during the hearing, but disputes that JCCS is entitled to a declaratory judgment.

## II. APPLICABLE LAW

The Lanham Act sets out the requirements to register a trademark with the United States Patent and Trademark Office (USPTO). In relevant part, 15 U.S.C. § 1051(a)(3)(D) states that:

To the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive, except that, in the case of every application claiming concurrent use, the applicant shall—
    **(i)** state exceptions to the claim of exclusive use; and
    **(ii)** [shall] specify, to the extent of the verifier's knowledge—
        **(I)** any concurrent use by others;
        **(II)** the goods on or in connection with which and the areas in which each concurrent use exists;
        **(III)** the periods of each use; and
        **(IV)** the goods and area for which the applicant desires registration.

Furthermore, 15 U.S.C. 1052(d) states in part that "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

**(d)** Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive: *Provided,* That if the Director determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks or the goods on or in connection with which such marks are used, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce prior to (1) the earliest of the filing dates of the applications pending or of any registration issued under this Act…Use prior to the filing date of any pending application or a registration shall not be required when the owner of such application or registration consents to the grant of a concurrent registration to the applicant. Concurrent registrations may also be issued by the Director when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce. In issuing concurrent registrations, the Director shall prescribe conditions and limitations as to the mode or place of use of the mark or the goods on or in connection with which such mark is registered to the respective persons.

3

Under 15 U.S.C. § 1119, courts have the power to determine the right to registration or the cancellation thereof.

The Lanham Act provides for recovery under 15 U.S.C. § 1117, also known as Section 35, which says that "plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USCS §§ 1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." It also states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id*. "An exceptional case involves acts that can be called malicious, fraudulent, deliberate, or willful." *Schlotzsky's, Ltd. v. Sterling Purchasing & National Distribution Company, Inc.,* 520 F.3d 393, 402 (5th Cir.2008) (internal quotation marks omitted). Examples of "exceptional cases" include those that are "groundless, unreasonable, vexatious, or pursued in bad faith." *Waco International, Inc. v. KHK Scaffolding Houston Inc.,* 278 F.3d 523, 536 (5th Cir.2002).

Furthermore, under Section 38 of the Lanham Act, "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C. § 1120. A claim of fraud against the USPTO in connection with trademark registration requires proof of the following elements: "(1) a false representation of a material fact; (2) knowledge or belief that the representation was false; (3) an intent to induce the USPTO to act in reliance on the misrepresentation; (4) reasonable reliance by the USPTO on the misrepresentation; and (5) damage from such reliance." *Sream, Inc. v. Superior Disc., LLC,* No. CV 17-8177, 2019 U.S. Dist. LEXIS 81581, 2019 WL 2124887, at *3 (E.D. La. May 15, 2019); *Texas Pig Stands, Inc. v.*

4

*Hard Rock Café Intern., Inc.*, 951 F.2d 684, 693 n.14 (5th Cir. 1992); *Wilson v. Tessmer Law Firm, PLLC*, No. 5:18-CV-1056-DAE, 2020 U.S. Dist. LEXIS 117338, at \*7 (W.D. Tex. Mar. 18, 2020).

### III.    ANALYSIS

JCCS has superior rights to the "JCCS" trademark. Medellin concedes that JCCS was the first user of the "JCCS" mark, but in its application to the USPTO, failed to acknowledge the existence of a concurrent user of the mark despite signing an affirmation that it would do so as required under 15 U.S.C. § 1051(a)(3)(D). Dkt. No. 16, Ex. 1 at 17-21. The parties have neither agreed to be concurrent users of a similar phrase within defined geographic boundaries nor has the USPTO decided to allow concurrent use of a phrase because it will not cause confusion. Medellin merely argues that it has a greater scope of business, and therefore should be granted concurrent use. But here, unlike what is authorized in the Lanham Act under 15 U.S.C. § 1052, Medellin knew of JCCS's use of the trademark long before it decided to register the mark with the USPTO itself, and only did so after failing to purchase JCCS. Dkt. No. 16 at 1. JCCS does not dispute this prior knowledge, nor does it dispute that JCCS was the first to use the trademark. Dkt. No. 17 at 3. At its heart, there is no genuine dispute as to a material fact regarding JCCS's first-in-time use of the "JCCS" mark. Given the fact that both parties conduct business across the United States and function in the same area of business – concrete chipping – it is appropriate to assert that there is a strong likelihood of confusion should Medellin be allowed to concurrently use the "JCCS" trademark. As a result, this Court **RECOMMENDS** that JCCS's Motion for Summary Judgment be **GRANTED IN PART** as to declaring JCCS as the senior user of the "JCCS" mark and canceling Medellin's registration of the "JCCS" trademark.

JCCS has not yet established damages as required to establish a fraud claim. As explained above, a claim of fraud against the USPTO in connection with trademark registration requires satisfaction of the following elements: (1) a false representation of a material fact; (2) knowledge or belief that the representation was false; (3) an intent to induce the USPTO to act in reliance on the misrepresentation; (4) reasonable reliance by the USPTO on the misrepresentation; and (5) damage from such reliance. *Sream, Inc. v. Superior Disc., LLC,* No. CV 17-8177, 2019 U.S. Dist. LEXIS 81581, 2019 WL 2124887, at *3 (E.D. La. May 15, 2019); *Texas Pig Stands, Inc. v. Hard Rock Café Intern., Inc.*, 951 F.2d 684, 693 n.14 (5th Cir. 1992); *Wilson v. Tessmer Law Firm, PLLC*, No. 5:18-CV-1056-DAE, 2020 U.S. Dist. LEXIS 117338, at *7 (W.D. Tex. Mar. 18, 2020). While JCCS argued during the January 23, 2026, hearing that attorneys' fees constitute damages under element five, the statutory text does not support this conclusion. Instead, it addresses attorneys' fees separately from the rest of the damages provision in § 1117(a), which suggests that fees are something distinct from the statutorily recoverable damages. 15 U.S. Code § 1117. Courts, including this one, have long held that attorneys' fees are not recoverable as damages under section 38 of the Lanham Act. *See United Phosphorus, Limited v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1232 (10th Cir.2000) (explaining that section 38 does not allow for the award of attorney's fees); *Aromatique, Inc. v. Gold Seal, Inc.,* 28 F.3d 863, 876 (8th Cir.1994) (same); *Exxon,* 696 F.2d at 551 (same); *Blue Bell, Inc. v. Jaymar–Ruby, Inc.,* 497 F.2d 433, 439 (2d Cir.1974) (same). The Supreme Court likewise held that federal courts may not award attorney's fees to a prevailing party unless specifically authorized by statute. *Alyeska Pipeline Service Company v. Wilderness Society,* 421 U.S. 240, 262, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Section 35 of the Lanham Act authorizes a district court to award attorney's fees only in "exceptional cases." 15 U.S.C. § 1117. The section specifically "permits

6

rather than mandates an award of fees"—thereby giving the district court discretion to determine on a case-by-case basis whether an award of fees is warranted—whereas section 38 "commands that a person who procured registration of a mark by false or fraudulent means 'shall be liable for any damages sustained in consequence thereof." *Aromatique,* 28 F.3d at 876 (quoting 15 U.S.C. § 1120). "Congress intended § 35 of the Lanham Act to mark the boundaries of the power to award monetary relief in cases arising under the Act." *Fleischmann,* 386 U.S. at 721, 87 S.Ct. 1404. Reading section 38 to allow an award of attorney's fees as damages "would deprive courts of the discretion to award fees under Section 35, which discretion is limited to exceptional cases." *Aromatique,* 28 F.3d at 876. It would add a judicially-crafted remedy to a cause of action created by a statute that expressly and meticulously provides the remedies available for vindication of the rights thereby protected. *Cf. Fleischmann,* 386 U.S. at 720 ("When a cause of action has been created by statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied."). Consequently, attorneys' fees are not damages, so attorneys' fees cannot be used to support the fifth element of the claim. That means one of the elements of JCCS's fraudulent registration claim is not met. Therefore, this Court **RECOMMENDS** that JCCS's Motion for Summary Judgement is **DENIED IN PART** as to damages.

## IV.    OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this

Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(l)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).

      **SIGNED** this 27nd day of February, 2026.

DAN N. MACLEMORE
UNITED STATES MAGISTRATE JUDGE